UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAN LYNCH, JOEL VALENTINE, PETER SZYMONIK, and ROBERT DOE, a natural person suing anonymously,<br>     Plaintiffs,<br><br>     v.<br><br>DANNEL P. MALLOY, in his official capacity as Governor of the State of Connecticut,<br>     Defendant. | No. 3:13-cv-01646 (JAM) |

**ORDER GRANTING MOTION TO DISMISS**

Plaintiffs are four Connecticut men who have sued the Governor of Connecticut, asserting multiple facial constitutional challenges to how the state courts of Connecticut award alimony in connection with divorce actions. The Governor has moved to dismiss on the ground that none of the four plaintiffs have standing. I agree. None of the plaintiffs are presently subject to or face an imminent prospect of being subject to the allegedly unconstitutional process for the award of alimony about which they complain. Plaintiffs do not have standing, and I will therefore dismiss this action.

**BACKGROUND**

Plaintiffs principally contend that Connecticut's alimony scheme violates the Due Process Clause because it places an unconstitutional burden on the right to marry and re-marry in numerous ways. For example, the alimony scheme allegedly allows for alimony awards without durational limit, for awards that may be subject to increase but not decrease, and for awards to spouses who are employable or otherwise affluent. Doc. #34 at 41. Plaintiffs further allege that

1

the alimony scheme is unconstitutionally vague with respect to the purpose and standards governing an alimony award and, relatedly, that it unconstitutionally vests legislative policymaking authority in the courts without meaningful appellate review. *Id.* at 41–43.  In addition, the alimony scheme allegedly violates the Due Process Clause because it unfairly allows for the award of attorneys' fees. *Id.* at 44. Lastly, the alimony scheme allegedly violates the First Amendment right to petition the government for redress of grievances because it allows for the implementation of unmodifiable alimony awards. *Id.* at 44–45.

The following facts about each of the four plaintiffs bear on whether they have standing.[1] Plaintiff Peter Szymonik was divorced in 2008. He and his ex-wife entered into an agreement and stipulation for judgment whereby they agreed to pay each other "1.00 per year as nominal alimony," modifiable only in the event of bankruptcy. Doc. #35-3 ¶ 32. That agreement was incorporated into a judgment by the Connecticut Superior Court. According to Szymonik, the court's judgment nevertheless also "awarded various other periodic payments in the nature of alimony," and "[m]ultiple orders have been made since the divorce in 2008 requiring additional such payments and attorneys' fees by Szymonik, despite the wife's various repeated and ongoing violations of court orders." Doc. #34 ¶ 10. The complaint does not specify the nature of those additional payments ordered by the state court, and there is no indication that the nominal alimony amount has been altered since 2008.

Plaintiff Joel Valentine was divorced in 2013. Following a trial in Connecticut Superior Court, the court entered a dissolution judgment that, in part, ordered plaintiff to "pay periodic alimony to [his ex-wife] in the amount of $300 per week for 14 years." *Valentine v. Valentine*,

---

[1] The background facts relating to standing are derived from the allegations of plaintiffs' second amended complaint (Doc. #34) and from court records of the divorce proceedings to which plaintiffs have been parties. It is "well-settled that the Court is entitled to take judicial notice of court records in evaluating a motion to dismiss." *Caro v. Fid. Brokerage Servs.*, 2015 WL 1975463, at *1 (D. Conn. 2015) (citing *AmCase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

2013 WL 2501980, at *3 (Conn. Super. Ct. 2013), *aff'd in part, rev'd in part*, 149 Conn. App. 799, 90 A.3d 300 (2014). Valentine appealed the financial orders of the trial court on the grounds that they were excessive and did not leave him enough income to support himself. In 2014, the Appellate Court reversed the financial orders, finding that the trial court had improperly "ordered him to make payments in excess of his financial capacity." *Valentine v. Valentine*, 149 Conn. App. at 807–808. It did not address the alimony award in particular, but reversed the financial orders as a whole, pursuant to the "mosaic doctrine." *See id.* at 803. As of the filing of the operative complaint in this case in July 2014, plaintiff was still awaiting his new trial. *See* Doc. #34 ¶ 12. Since then, the trial has been conducted, based on which the trial court ordered in part that "[Valentine] shall pay to [his ex-wife], retroactive to the date of judgment, alimony in the amount of $250 per week," until the death of either party or remarriage of Valentine's ex-wife. *Valentine v. Valentine*, 2014 WL 5394909, at *3 (Conn. Super. Ct. 2014). That judgment has been appealed by Valentine's ex-wife, although it is not clear that the alimony award—or any of the financial orders, for that matter—is being challenged.

Plaintiff Dan Lynch was divorced in 2009. Following his trial in Connecticut Superior Court, the trial court entered a dissolution judgment that, in part, ordered plaintiff to "pay periodic alimony to [his ex-wife] at the rate of $200.00 per week" for ten years or until either party's death or his ex-wife's remarriage. *Lynch v. Lynch*, 2009 WL 3286025, at *2 (Conn. Super. Ct. 2009), *aff'd in part, rev'd in part*, 135 Conn. App. 40, 43 A.3d 667 (2012). Lynch appealed the judgment. He alleges that "[d]uring the pendency of the appeal, his alimony obligation was increased materially." Doc. #34 ¶ 11. On appeal, Lynch questioned the trial court's decision to modify an alimony order that had been previously entered pursuant to a stipulation. *See Lynch v. Lynch*, 135 Conn. App. at 46. The Connecticut Appellate Court rejected

3

his argument, finding no abuse of discretion in the trial court's decision to grant a motion to modify the preexisting order. *Id.* at 47–48. As such, it affirmed the portion of the trial court's order that applied retroactively. *Id.* at 48. Based on matters unrelated to alimony, the Connecticut Appellate Court remanded the case for a new hearing on all other financial orders. *Id.* at 48, 54, 58. On remand, the trial court ordered Lynch to pay his ex-wife a "periodic alimony in the amount of $100 per week" for approximately seven years or until either party's death. *Lynch v. Lynch*, 2012 WL 6846549, at *5 (Conn. Super. Ct. 2012), *aff'd*, 153 Conn. App. 208, 100 A.3d 968 (2014). Lynch appealed, and his appeal was pending when the instant suit commenced and when the operative complaint was filed. In his appeal, he argued in part that his ex-wife ought to pay him alimony, rather than the other way around. *See Lynch v. Lynch*, 153 Conn. App. 208, 227, 100 A.3d 968 (2014). The Connecticut Appellate Court was not persuaded, and affirmed the trial court's judgment. *Id.* at 252. The Connecticut Supreme Court denied Lynch's petition for certification. *Lynch v. Lynch*, 315 Conn. 923, 108 A.3d 1124 (2015).

The last of the plaintiffs—"Robert Doe"—has proceeded by means of pseudonym for fear that disclosure of his identity could alert his wife to his possible plans to seek a divorce. According to the complaint, "[p]laintiff Robert Doe is a married resident of Connecticut, currently unable to divorce due to the unpredictable repercussions of an award of alimony on his property interests." Doc. #34 ¶ 9. He feels unwilling to take the risk of ending his "broken marriage" because he fears "the injustices of the Connecticut court system[] because he has witnessed the experiences of many his[sic] friends who have suffered through unjust alimony awards." *Id.* ¶ 169. Nothing in the record or otherwise brought to the Court's attention suggests that Doe has divorced since the filing of the complaint or that he has been ordered to pay alimony.

**DISCUSSION**

Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. The reason for the case-or-controversy limitation is to restrain the federal courts from enmeshing themselves in deciding abstract and advisory questions of law. Accordingly, any federal court plaintiff must have case-or-controversy "standing" to assert a claim—specifically, "a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)); *see also E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 449–50 (2d Cir. 2014).

The first requirement—that a plaintiff have sustained an injury-in-fact—"helps to ensure that the plaintiff has a 'personal stake in the outcome of the controversy.'" *Susan B. Anthony List*, 134 S. Ct. at 2341 (quoting *Warth v. Seldin,* 422 U.S. 490, 498 (1975)). An injury-in-fact must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Ibid* (quoting *Lujan*, 504 U.S. at 560) (some internal quotation marks omitted); *see also E.M.*, 758 F.3d at 449.

I will first consider whether plaintiff "Robert Doe" has standing. He has not been entangled in the alimony scheme in any formal way and apparently remains (unhappily) married, but he believes he has standing to sue because, if he seeks a divorce, he may be treated unfairly by an unconstitutional alimony scheme. But the fact that Doe is contemplating divorce and may possibly someday be subject to an alimony order is not enough to constitute an injury-in-fact for standing. As the Supreme Court has recently noted, "we have repeatedly reiterated that

5

'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (emphasis in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). Thus, the Supreme Court has made clear that a "theory of standing" that "relies on a highly attenuated chain of possibilities[ ] does not satisfy the requirement that threatened injury must be certainly impending," *id.* at 1148, and it has also noted its "usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors." *Id.* at 1150.

Doe's feared harm is wholly contingent upon a series of speculations: that Doe or his wife will seek a divorce, that Doe's wife will decide to seek alimony, and that a Connecticut judge will order Doe to pay alimony—something plaintiffs themselves allege occurs in fewer than 20% of all divorce cases. *See* Doc. #34 ¶ 43. Such a chain of possibilities, especially including the intervening actions of a Doe's wife and of an independent judge, does not constitute "certainly impending" future injury under *Clapper*. Nor does the fact that Doe is choosing to remain unhappily married out of his fears constitute an injury-in-fact: he "cannot manufacture standing merely by inflicting harm on [himself] based on [his] fears of hypothetical future harm that is not certainly impending." *Clapper*, 133 S. Ct. at 1151. Doe has no standing.

As for the remaining three defendants, although they have at least been directly touched by the alimony scheme, I conclude that their alleged injuries at this time are insufficient to establish a constitutional injury-in-fact. To begin with, the injury-in-fact requirement exists to ensure that a plaintiff has a "personal stake in the outcome of the controversy." *Susan B. Anthony List*, 134 S. Ct. at 2341 (internal quotation marks and citation omitted). Apparently recognizing that the *Rooker-Feldman* doctrine would bar them from directly challenging the alimony awards

6

that have actually entered in their cases,[2] plaintiffs instead describe their injury in terms of being subject to the very process that allows for arbitrary and unfair awards against them:

> The injury of which the named plaintiffs complain in this case is being subject to an arbitrary and capricious state scheme that deprives them of property (and often liberty) while offering not even the safeguard of a written justification. The injury is being subject to the whim and caprice and prejudices of state-court judges who are not compelled to explain themselves and who suffer no penalty for being consistently wrong or overreaching. The injury is being relegated to the judgments of literally unaccountable guardians *ad litem* who are subject to no accessible constraints. But however viewed, that injury, because it is the creature of a fundamentally flawed statutory scheme, existed prior in time to state-court judgments to which plaintiffs are subject.

Doc. #47 at 15 (footnote omitted).

Plaintiffs emphasize repeatedly that their complaint "does not seek the grant or modification of any judgment or decree affecting marital relations, whether alimony or divorce or custody or support" with regard to "their own divorce proceedings, or . . . those of others." Doc. #47 at 17–18. What they fear are prospective injuries arising from the possibility of modification of their existing awards and from Valentine's ongoing appeal, forcing them to live in "apprehension of the coercive power of government being used against them" without due process. *Id.* at 22.

---

[2] The *Rooker-Feldman* doctrine prohibits a federal court from adjudicating claims "'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). To satisfy the requirements of the doctrine:
> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced.

*Ibid* (quoting *Hoblock v. Albany Cnty Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)). Here, were the named plaintiffs to challenge their alimony orders, they would be challenging orders that were made against them in state court, caused by the state court judgments against them, asking this Court to reject the judgments setting forth those orders, and though there have been appeals and remands for Lynch and Valentine, for all three named plaintiffs the state court entered a judgment awarding alimony prior to the filing of this case.

But the named plaintiffs do not seek to make such a challenge. "The named plaintiffs understand and accept that any challenge to [their alimony] awards must be brought in the Connecticut state courts. Their complaint in this case is about the regime that enables such awards." Doc. #47 at 12 n.4; *see also* Doc. #47 at 15 n.7 (noting that "they do not challenge their individual orders as to entitlement or amount in this case"). I therefore need not determine precisely what effect the *Rooker-Feldman* might have had over a different version of the case.

Their described injuries can be broadly summarized as their past exposure to an unfair system, independent of the alimony orders that the system produced, and their fears that the system will treat them unfairly in the future. Such harm does not meet the injury-in-fact requirement. "[A]lthough 'past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief,' '[p]ast wrongs' may serve as 'evidence bearing on whether there is a real and immediate threat of repeated injury.'" *NB ex rel. Peacock v. D.C.*, 682 F.3d 77, 84 (D.C. Cir. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).[3] And for plaintiffs, regardless of their past exposure to the alimony regime, there is simply no real and immediate threat of any repeated injury. Szymonik pays his ex-wife a nominal alimony award of $1 per year, per his own agreement, modifiable only by bankruptcy. Nothing before the Court suggests that either party is facing bankruptcy or that Szymonik's ex-wife is going to haul him back into court to demand a new alimony order and thus subject him to the system anew. Lynch is under order to pay his ex-wife $100 per week in alimony until 2019, and there is no allegation that he will be hauled back into court in the imminent future to suffer its statutorily-created procedural caprices either. Valentine has been ordered to pay his ex-wife $250 per week in alimony until death or her remarriage. Although court records indicate that the ruling including that order has been appealed, it is not clear whether that appeal even includes the alimony order, and it is impossible to say with any confidence whether the result of that appeal will subject Valentine to the alleged injustices of the alimony scheme on remand.

Plaintiffs allegedly fear prospective injury from the possibility that their alimony awards will be modified, but there is no indication, for any of the named plaintiffs, that an ex-spouse is even seeking such modification, let alone that it is "certainly impending." *Clapper*, 133 S. Ct. at

---

[3] The present case concerns declaratory, rather than injunctive relief; plaintiffs hope that a declaration that Connecticut's alimony statutes are unconstitutional would prompt the legislature to amend the laws.

1143. As for any possibility of a future contempt order or resulting incarceration for plaintiffs if they do not comply with their alimony orders, even if it were sufficiently likely to occur to constitute an immediate threat of injury, such a situation would be inextricably tied to the unchallenged alimony orders themselves.

And any prospective injury arising from the possibility that the named plaintiffs will become embroiled in alimony-related proceedings due to future divorces from future marriages is far too speculative, even more so than Doe's feared injuries in the event that he divorces his current wife. The doctrine of "imminence" "has been stretched beyond the breaking point when . . . the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control. In such circumstances we have insisted that the injury proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Lujan*, 504 U.S. at 564 n.2.

Furthermore, the kind of injury described by plaintiffs—fear of being subject to a system that does not guarantee due process—is not sufficient to establish standing without showing that any procedural inadequacies harm "some threatened concrete interest . . . that is the ultimate basis of [their] standing." *Id.* at 573 n.8. It is true that, upon such a showing, courts will relax the redressability and imminence requirements, *id.* at 572 n.7, but the injury-in-fact requirement remains, and "[a] procedural injury claim therefore must be tethered to some concrete interest adversely affected by the procedural deprivation." *See WildEarth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013). For example, plaintiffs might show that the procedural harm subjects them to the deprivation of their property by being ordered to pay alimony or of their liberty by being incarcerated for failure to do so. Here, plaintiffs fear that the system may have so deprived

9

them (through alimony orders that they do not and cannot seek to rely on as their injury-in-fact) and may do so in the future (through future proceedings and alimony orders that they have not established are sufficiently likely to occur), but they have not been able to articulate any cognizable concrete interest that has been actually threatened so as to meet the injury-in-fact requirement.

In short, plaintiffs have not alleged facts to demonstrate that they are likely to suffer any concrete harm from the alimony scheme that is separate and independent from the injury caused by the alimony awards in some of their own cases. They have no standing to bring this case.[4]

I need not consider whether other persons might hypothetically be able to press the facial constitutional challenge that the four plaintiffs attempt to pursue here. The Supreme Court has repeatedly reiterated that "[t]he assumption that if respondents have no standing to sue, no one would have standing, is not a reason to find standing." *Clapper*, 133 S. Ct. at 1154 (internal quotation marks and citations omitted). And plaintiffs or others can certainly bring an as-applied challenge to the alimony scheme in state court if they are again subject to alimony-related proceedings.

Because plaintiffs lack standing to bring their claims, I need not address defendant's argument that the Court should abstain from hearing the case under *American Airlines, Inc. v. Block*, 905 F.2d 12 (2d Cir. 1990), or that the complaint should be dismissed under Rule 12(b)(6)

---

[4] The redressability prong of the standing analysis provides additional problems for plaintiffs. For one thing, they chose to name as the party defendant Governor Malloy. As the head of the executive branch, he has no power to order the legislature to modify the laws or to order the family court system to promulgate new guidelines. It is far from clear that plaintiffs have sued the right defendant, and nothing this Court says in a declaratory judgment can change that. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement."). Moreover, because the only injuries plaintiffs claim are their general fears of an unjust system, and plaintiffs explicitly do not seek relief pertaining to their own alimony orders, the relief they seek would "no more directly and tangibly benefit[ ] [them] than it [would] the public at large." *See Hollingsworth v. Perry*, 133 S. Ct. 2652, 2662 (2013).

of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.

## CONCLUSION

Defendant's motion to dismiss (Doc. #35) is GRANTED. Plaintiff Doe's motions to proceed anonymously (Doc. #36) and to seal his affidavit (Doc. #37) are denied as moot. The Clerk is instructed to close this case.

It is so ordered.

Dated at Bridgeport this 27th day of May 2015.

/s/      *Jeffrey Alker Meyer*
       Jeffrey Alker Meyer
       United States District Judge